UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SMITH,<br><br>   Petitioner,<br><br> v.<br><br>RON DAVIS,<br><br>   Respondent. | No. 2:15-cv-1785 JAM AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition challenges his 2012 conviction, following a jury retrial, for oral copulation and related enhancements. ECF No. 1. Petitioner seeks relief from his conviction on grounds of instructional error, prosecutorial misconduct, and ineffective assistance of counsel.

Respondent moves for dismissal on the ground that the instant petition was filed beyond the AEDPA one-year statutory limitation period. ECF No. 14. Petitioner opposed the motion, ECF No. 19, and respondent filed a reply, ECF No. 22. For the reasons discussed below, the undersigned recommends that the petition be dismissed as untimely.

I. Factual and Procedural Background

The relevant chronology of this case is as follows:

In 1998, petitioner was convicted of one count of residential burglary, two counts of

1

1  residential robbery, and one count of forcible oral copulation and related enhancements. Lodged

2  Doc. 2 at 1. Petitioner was sentenced to an indeterminate term of 25-years-to-life in state prison

3  on the oral copulation charge, and a 20-year consecutive determinate term on the other counts.

4  Id. at 2.

5  In 2010, petitioner was granted federal habeas relief with respect to the oral copulation

6  conviction, which was vacated on the ground that the trial court coerced the jury's verdict on that

7  charge. Lodged Doc. 2 at 2; Dkt. No. 94 in Smith v. Kane, Case No. 2:03-cv-1871-LKK-KJM

8  (E. D. Cal. Nov. 3, 2010).

9  Petitioner was retried by a jury on the oral copulation charge and related enhancements.

10  In 2012, petitioner was again convicted and sentenced to an indeterminate term of 25 years to life.

11  Lodged Doc. 2 at 2.

12  Petitioner appealed, and on December 16, 2013, the California Court of Appeal, Third

13  Appellate District, directed the trial court to amend the abstract of judgment to award custody

14  credits, but otherwise affirmed the judgment. Lodged Doc. 2 at 13.

15  On January 29, 2014, petitioner, through counsel, filed a petition for review in the

16  California Supreme Court. Lodged Doc. 3. The California Supreme Court denied the petition on

17  March 12, 2014 without comment or citation. Lodged Doc. 4.

18  Petitioner filed no post-conviction collateral challenges in state court.

19  The instant federal petition was constructively filed on August 14, 2015.[1] ECF No. 1.

20  II.     Statute of Limitations

21  Section 2244(d) (1) of Title 28 of the United States Code contains a one-year statute of

22  limitations for filing a habeas petition in federal court. This statute of limitations applies to

23  habeas petitions filed after April 24, 1996, when the Antiterrorism and Effective Death Penalty

24  Act (AEDPA) went into effect. Cassett v. Stewart, 406 F.3d 614, 625 (9th Cir. 2005). Absent

25  circumstances not present here, the limitations period runs from the date that the state court

26

---

27  [1] As a pro se inmate, petitioner is entitled to the use of the prison mailbox rule in determining the
    constructive filing date of his federal habeas petition. Houston v. Lack, 487 U.S. 166, 276
28  (1988).

judgment becomes final by the conclusion of direct review or the expiration of time to seek direct review. § 2244(d)(1)(A); Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010). The time during which a "properly filed" application for state post-conviction relief is pending does not count toward this one-year period. § 2244(d)(2); Porter, 620 F.3d at 958.

In the instant case, the California Supreme Court denied the petition for review on March 12, 2014. Lodged Doc. 4. Petitioner's conviction became final ninety days later, on June 10, 2014, when the time for seeking certiorari with the United States Supreme Court expired. See Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999). The AEDPA statute of limitations period began to run the following day, on June 11, 2014. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (the AEDPA limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Absent tolling, petitioner's last day to file his federal petition was June 10, 2015.

Because petitioner filed no applications for state habeas relief, the limitations period elapsed without any tolling on June 10, 2015. The instant petition was constructively filed on August 14, 2015, just over two months after the one-year limitations period expired. Accordingly, this action is time-barred unless petitioner can demonstrate that he is entitled to equitable tolling. Petitioner concedes the instant petition's facial untimeliness, but argues that he is entitled to equitable tolling. ECF No. 19.

### III. Equitable Tolling

A habeas petitioner is entitled to equitable tolling of AEDPA's one-year statute of limitations only if the petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009). The diligence required is "reasonable diligence," not "maximum feasible diligence." See Holland, 560 U.S. at 653; see also Bills v. Clark, 628 F.3d 1092, 1096 (9th Cir. 2010).

"The threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation

and internal quotation marks and punctuation omitted).  "To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on the petitioner's part, all of which would preclude the application of equitable tolling."  Waldron–Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008).  Petitioner bears the burden of alleging facts that would give rise to tolling.  Pace, 544 U.S. at 418.

      A.  Petitioner's Allegations

Petitioner contends that he is entitled to equitable tolling because he was abandoned by his appellate attorney, Scott Concklin, who refused to correspond with petitioner, failed to timely inform petitioner that his petition for review had been denied by the California Supreme Court, and delayed in forwarding petitioner's appellate record.  ECF No. 19 at 4-8.  Specifically, petitioner asserts that the following events support equitable tolling:

On March 12, 2014, petitioner's petition for review was denied by the California Supreme Court.

On May 10, 2014, petitioner "was advised by [his] family that the online docket in [his] case reflected that [his] appeal was denied on March [12],[2] 2014."  ECF No. 19 at 23.

On May 11, 2014, petitioner sent the following letter to Concklin:

> Dear Mr. Concklin,
>
> I was recently appraised by my family that on March 12, 2014 the California Supreme Court denied the Petition for Review that you filed on my behalf thus ending your representation of me.[3]

---

[2] Although petitioner alternatively asserts that his petition for review was denied by the California Supreme Court on March 12, 2014 and March 13, 2014, this inconsistency appears to be a typographical error.  Regardless, the petition for review was denied on March 12, 2014.  See Lodged Doc. 4 (Order of denial).

[3] It appears that Concklin had previously advised petitioner regarding the scope of Concklin's representation of petitioner.  In a letter dated November 17, 2012, attached as an exhibit to petitioner's opposition, Concklin wrote:

> If the [California] Supreme Court grants the petition for review, the

4

> It has been 60 days since the Supreme Court's order became effective and yet I have not received my appellate record from you OR any letter advising me of the court's ruling in my case. As you should be well aware, the time which you're withholding my appellate record is using up my statutory time that I have to file for relief in the federal courts. Will you please send my appellate record forthwith?
>
> Thank you for your time and understanding with this matter.

ECF No. 19 Exh. G at 36. Petitioner's letter went unanswered. Id. at 23.

On June 9, 2014, petitioner initiated a complaint to the State Bar of California regarding Concklin's conduct. ECF No. 19 at 23. In his complaint, petitioner described the difficulties he had communicating with Concklin about his direct appeal in 2012 and 2013. See ECF No. 19 Exh. H at 38-39. Petitioner explained that Concklin refused to respond to letters or accept collect phone calls, and failed to properly federalize his appellate brief, despite petitioner's requests for him to do so. Petitioner further explained that his petition for review had been denied and that he had written a letter to Concklin asking why Concklin had not advised petitioner of "these developments or sent [petitioner's] appellate record so [petitioner] could proceed on [his] own." Id. at 39. Petitioner asserted that he still had not received a response from Concklin, or his appellate record, and requested the Bar's assistance with the matter, lamenting that Concklin's actions had "consumed 90 days of the time [petitioner had] to file [his] federal habeas court." Id.

On July 7, 2014, petitioner received a response from the Bar, indicating that his complaint was under evaluation. Id. at 23.

On or about August 15, 2014, petitioner received his appellate record from Concklin,

---

> court of appeal decision will be vacated, and the Supreme Court will decide the case anew. If the Supreme Court denies review, the decision of the court of appeal will become final.
>
> **REMITTITUR.** Once the decision of the court of appeal becomes final, a remittitur will be issued formally, concluding your appeal. My appointment as your attorney will conclude. If your appeal is decided unfavorably, you still could have the opportunity to petition the federal court for a writ of habeas corpus. Federal relief may be available if your appeal raised federal constitutional issues, which were incorrectly decided by the state court. There is currently a one year statute of limitation, from the conclusion of a state appeal, within which to file a federal petition.

ECF No. 19 Exh. C at 20.

5

1  along with a letter and a printout of the electronic docket in his appeal. Id. at 23. The letter from

2  Concklin, dated August 14, 2014, reads as follows:

> Dear Mr. Smith:
>
> I am enclosing a copy of the online docket in your appeal. It shows that date of all activity from the inception of the case to the filing of the remittitur. As I previously informed you, the remittitur signifies that the California Supreme Court denied review and the appeal is concluded. The issuance of the remittitur concludes my appointment as your attorney in the appeal. I have returned all of the trial transcripts (Clerk and Reporter's Transcripts) to you, which you should have received.
>
> The federal issues that were raised in your appeal were preserved by filing a Petition in the California Supreme Court[.] The Review Petition itself contains a summary of those issues that can be used for reference in your federal writ petition, if you chose to file one.

ECF No. 19 Exh. F at 30.

Petitioner asserts that the August 14, 2014 letter was the first time Concklin informed him that his appeal had been denied by the California Supreme Court and that Concklin no longer represented petitioner as counsel. Id. at 23. Petitioner contends that he is entitled to equitable tolling from the commencement of the limitations period on June 11, 2014[4] through August 15, 2014, when he received the above letter and appellate record from Concklin.[5]

Notably, if petitioner is entitled to equitable tolling for this period, the deadline for filing the federal petition would be extended 66 days to August 15, 2015, rendering the instant petition, filed August 14, 2015, timely. As explained more fully below, however, petitioner has not demonstrated that the asserted extraordinary circumstances were the cause of his untimeliness.

////

////

---

[4] Although petitioner contends he is entitled to equitable tolling beginning on March 13, 2014, see ECF No. 19 at 7-8, the federal statute of limitations period did not begin to run until June 11, 2014. Accordingly, the court considers whether petitioner is entitled to equitable tolling beginning on June 11, 2014 rather than March 13, 2014.

[5] To the extent respondent asserts that petitioner meant to allege that he received the appellate record from Concklin on August 14, 2014 (the date of the letter) rather than August 15, 2014, the court disagrees. Considering that the letter is dated August 14, 2014, it is seems unlikely that petitioner received the letter on the same date.

B. Discussion

Under extraordinary circumstances, counsel's malfeasance may support equitable tolling. Holland, 560 U.S. at 652-53 (equitable tolling may be appropriate where post-conviction counsel effectively abandoned client); Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003) (statute of limitations equitably tolled where attorney was retained to prepare and file a habeas petition for incarcerated inmate, failed to do so, and then disregarded requests to return files pertaining to the case until well after the petition was due); Gibbs v. Legrand, 767 F.3d 879, 886 (9th Cir. 2014) ("[f]ailure to inform a client that his case has been decided, particularly where that decision implicates the client's ability to bring further proceedings *and* the attorney has committed himself to informing his client of such a development, constitutes attorney abandonment."); Foley v. Biter, 793 F.3d 998, 1003 (9th Cir. 2015) (equitable tolling warranted where counsel failed to communicate with client, failed to notify client that his habeas petition had been denied, and failed to withdraw as counsel so client could be served directly, where client believed counsel was representing him and expected a long delay before receiving a decision from the district court).

Relying on Gibbs v. Legrand, 767 F.3d 879, petitioner asserts that Concklin's failure to communicate with him, failure to inform him that his petition for review had been denied by the California Supreme Court, and delay in forwarding the appellate record amounts to client abandonment warranting equitable tolling. ECF No. 19 at 4, 6-7.

In Gibbs, the petitioner's attorney filed a state post-conviction petition in the Nevada Supreme Court and promised to forward petitioner any notice received from the court regarding his case. 767 F.3d at 882-83. When the Nevada Supreme Court denied the petition, counsel did not notify petitioner of the denial, despite petitioner's repeated inquiries regarding the status of his case. Id. at 883. As a result, petitioner did not learn that his petition had been denied until petitioner wrote to the Nevada Supreme Court and received, in response, a copy of the docket sheet reflecting the order of denial. Id. By that time, the one-year deadline for filing a federal habeas corpus petition had expired. Id. at 882. The Ninth Circuit held that counsel's failure to communicate and failure to inform the petitioner of the state court's decision, despite counsel's

1 promise to do so, amounted to abandonment, such that the petitioner was not responsible for the
2 fact that he did not learn of the state court's denial of his petition until after the federal filing
3 deadline had passed. Id. at 887-88.

4 The court first notes the markedly different obstacles faced by the petitioner in Gibbs and
5 petitioner in the instant case. In Gibbs, the petitioner repeatedly attempted to contact counsel to
6 learn the status of his case, but as a result of counsel's actions remained unaware that the state
7 court had reached a decision in his case and that the federal limitations clock had started ticking.
8 In contrast, petitioner here learned on his own, *before* the federal limitations period commenced,
9 that the state court had reached a decision in his case, and attempted to contact counsel in order to
10 retrieve the appellate record so he could proceed on his own. Whereas the petitioner in Gibbs
11 remained wholly ignorant of the limitations period, petitioner here was motivated by his own
12 knowledge that the limitations clock was ticking.

13 The instant case also differs from Gibbs in that there is no indication that Concklin
14 promised to personally inform petitioner when the state court issued a decision in his direct
15 appeal. See Gibbs, 767 F.3d at 887 ("Moreover, [counsel] went out of his way to *guarantee*
16 Gibbs that he would update him about the case . . .") (emphasis in original). Rather, it appears
17 Concklin advised petitioner that if the California Supreme Court denied his petition for review,
18 petitioner would receive notice directly from the Court of Appeal, in the form of a remittitur,
19 which would signal to petitioner that his appeal had concluded. See ECF No. 19 Exh. C at 20.
20 However, because it is unclear from the record before the court whether petitioner actually
21 received notice from the state court, the court will assume for the purposes of this motion that
22 petitioner did not receive the remittitur.[6]

23 Even assuming that petitioner did not receive the remittitur and that Concklin's actions
24 constitute client abandonment, the larger problem is that petitioner has not demonstrated that

---

[6] While respondent asserts that the proof of service attached to the remittitur shows that petitioner was directly served with a copy of the remittitur on March 19, 2014, ECF No. 22 at 3, the remittitur and proof of service were not included in the documents respondent lodged with the court, see ECF No. 15 (Notice of Lodging). Petitioner makes no mention of whether he received the remittitur.

1   these circumstances were the cause of his untimely filing.

2       First, while petitioner asserts that Concklin did not timely notify him that the California Supreme Court denied his appeal on March 12, 2014, petitioner concedes that he learned of the denial on May 10, 2014 from another source. See Ramirez v. Yates, 571 F.3d at 997–98 (9th Cir. 2009) ("a prisoner's *lack of knowledge* that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter") (emphasis added). As discussed above, it was petitioner's awareness of the state court's denial, and his understanding that the statute of limitations was running, that prompted petitioner's May 11, 2014 letter to Concklin and subsequent complaint to the State Bar. Thus, Concklin's delay in notifying petitioner of the state court's decision could not have been the cause of petitioner's untimeliness, as petitioner had actual notice of the denial an entire month before the statute of limitations began to run.

    Second, Concklin's failure to communicate with petitioner did not mislead petitioner into believing that Concklin was still representing petitioner or working to prepare a federal petition on his behalf. Concklin had previously advised petitioner that Concklin's representation of petitioner would terminate upon the conclusion of direct review, and it is apparent from petitioner's statements in his May 11, 2014 letter that petitioner understood this point: "[O]n March 12, 2014 the California Supreme Court denied the Petition for Review that you filed on my behalf *thus ending your representation of me.*" See ECF No. 19 Exh. G at 36 (emphasis added). Thus, there is no argument that petitioner delayed because he believed Concklin intended to prepare his federal petition. See Gibbs, 767 F.3d at 888-89 (observing that until petitioner definitively terminated the attorney-client relationship, petitioner may reasonably have believed counsel was going to assist him in federal court); Foley, 793 F.3d at 1003. Petitioner clearly understood that he was proceeding "on [his] own" and was focused on obtaining the appellate record. See ECF No. 19 Exh. G at 36, 39.

    Petitioner also appears to assert that he is entitled to equitable tolling because Concklin did not provide him with a copy of the state court's order denying his petition for review. See ECF No. 19 at 6. See Gibbs, 767 F.3d at 889 (concluding that petitioner "could not realistically

9

1 file a federal petition" until he received a copy of the state court's order affirming the denial of
2 his petition," where petitioner requested a copy of the order from the state court and it was
3 unclear from the record when petitioner received the document). Here, petitioner's allegation that
4 Concklin "has never" provided petitioner with a copy of the state court's order suggests that
5 petitioner prepared and filed the instant federal petition without obtaining a copy of the order of
6 denial. Thus, it does not appear that Concklin's failure to provide petitioner with a copy of the
7 state court order caused petitioner to file his federal petition two months late.

8   Petitioner's main argument appears to be that he is entitled to equitable tolling because of
9 Concklin's delay in forwarding the appellate record. Petitioner is correct that in some instances, a
10 petitioner's lack of access to his or her legal files may warrant equitable tolling. See Waldron–
11 Ramsey, 556 F.3d at 1013 ("[d]eprivation of legal materials is the type of external impediment for
12 which we have granted equitable tolling"); Ramirez, 571 F.3d at 998 (holding that "a complete
13 lack of access to a legal file may constitute an extraordinary circumstance" and remanding for
14 determination of whether petitioner's lack of access to his legal file made timely filing
15 impossible). However, the dispositive question is whether the denial of access to the files was the
16 cause of the delay. United States v. Battles, 362 F.3d 1195, 1197–98 (9th Cir. 2004).

17   Petitioner repeatedly asserts in his opposition that the "extraordinary circumstances"
18 brought about by Concklin's actions were lifted on August 15, 2014, when petitioner received the
19 appellate record. At that time, ten months remained in the federal limitations period, and
20 petitioner has offered no explanation as to why he was unable to file his federal petition during
21 this ten month period. While the court's own review of the record indicates that petitioner may
22 have used the appellate record to prepare a lengthy statement of facts,[7] the arguments in the
23 federal petition were taken verbatim from the petition for review filed on direct appeal by counsel
24 in state court.[8] Given that petitioner received the appellate record early in the limitations period,

---

[7] Because petitioner's opening appellate brief is not part of the record, it is unclear if the statement of facts was taken from the brief prepared by counsel.
[8] It appears that petitioner re-typed the argument section from the petition for review word for word, with a few minor edits, i.e., "petitioner" instead of "appellant" and "appellate court" instead of "Court of Appeal." See ECF No. 1 at 27-54; Lodged Doc. 3 at 4-25.

1   and did not make any new arguments in his federal petition, there is no indication that petitioner
2   would have filed his federal petition within the one-year limitations period had he received the
3   appellate record from Concklin at an earlier date.  See Randle v. Crawford, 604 F.3d 1047, 1058
4   (9th Cir. 2009) (no equitable tolling based on counsel's retention of files where there was no
5   indication that petitioner would have filed his federal habeas petition within the one-year
6   limitations period had he received the files sooner); c.f. Spitsyn, 345 F.3d at 801 (equitable tolling
7   may be warranted where counsel retained petitioner's case file through the duration of the federal
8   limitations period).  Thus, it appears that it was petitioner's own lack of diligence during the ten
9   months after he received the appellate record, and not Concklin's delay in forwarding the records,
10  that was the cause of petitioner's untimeliness.

11      Petitioner "bears the burden of showing his own diligence *and* that the hardship caused by
12  lack of access to his materials was an extraordinary circumstance that caused him to file his
13  petition . . . late."  Waldron–Ramsey, 556 F.3d at 1013 (emphasis added).  While the court is
14  convinced that petitioner acted diligently to obtain his appellate record from Concklin, there is no
15  evidence that the delayed receipt of the files made timely filing impossible.  Because petitioner
16  has not established that Concklin's actions caused petitioner's untimely filing, petitioner is not
17  entitled to equitable tolling.  Accordingly, the undersigned recommends that respondent's motion
18  to dismiss the petition as untimely be granted.

19      IV.   Certificate of Appealabilty
20      Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must
21  issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A
22  certificate of appealability may issue only "if the applicant has made a substantial showing of the
23  denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these
24  findings and recommendations, a substantial showing of the denial of a constitutional right has
25  not been made in this case.  Therefore, no certificate of appealability should issue.

26      V.   Conclusion
27      In accordance with the above, IT IS HEREBY RECOMMENDED that:
28      1. Respondent's motion to dismiss (ECF No. 14) be granted and petitioner's application

1  for a writ of habeas corpus be denied as untimely.

2      2. This court decline to issue the certificate of appealability referenced in 28 U.S.C. §
3  2253.

4      These findings and recommendations are submitted to the United States District Judge
5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
6  after being served with these findings and recommendations, any party may file written
7  objections with the court and serve a copy on all parties.  Such a document should be captioned
8  "Objections to Magistrate Judge's Findings and Recommendations."  **Due to exigencies in the**
9  **court's calendar, no extensions of time will be granted.**  The parties are advised that failure to
10 file objections within the specified time may waive the right to appeal the District Court's order.
11 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
12 DATED:  September 9, 2016.

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE